UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA L. STOUDEMIRE

       Plaintiff,

v.                                                Case No. 05-74086

GENERAL MOTORS CORP.,            Honorable Patrick J. Duggan

       Defendant.
_____/

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 12, 2007.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

On September 23, 2005, Plaintiff Rita Stoudemire ("Plaintiff"), an African-American woman, filed a six-count Complaint against her former employer, Defendant General Motors Corporation ("Defendant"), in Wayne County Circuit Court. Because Plaintiff's allegations concern collective bargaining agreements entered into between the UAW and General Motors, Defendant removed Plaintiff's Complaint to federal court on October 25, 2005, pursuant to 28 U.S.C. § 1331. In her Complaint, Plaintiff alleges the following six counts: sexual harassment in violation of the Elliot-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS ANN. §§37.2101-37.2804 (Count I); disability discrimination in violation of Michigan's Persons with Disability Rights Act, MICH.

COMP. LAWS ANN. §§37.1201-37.1607 (Count II); race discrimination in violation of the ELCRA (Count III); gender discrimination in violation of the ELCRA (Count IV); assault and battery (Count V); and intentional infliction of emotional distress (Count VI). Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The Court held a hearing on Defendant's motion on November 30, 2006.

I.      **Factual Background**

Plaintiff commenced her employment with Defendant in 1977. At all times during her employment with Defendant, Plaintiff was an hourly employee represented by the UAW. In November 1998, Plaintiff was transferred to Defendant's Powertrain facility in Romulus Michigan.

Plaintiff worked at the Romulus plant as a Technician Engine Assembly. In that position, she was assigned to the assembly line to work on particular tasks related to the assembly of engines. Plaintiff first installed oil pans. Plaintiff contends that in December 2000, when she was transferred to Department 462 to install manifolds on engines, she began experiencing harassment and discrimination.

Plaintiff asserts that she was subjected to "unabated" sexual harassment at the Romulus plant. At her deposition, she identified nine instances of sexual harassment[1]: (1)

---

[1] Plaintiff identifies other instances when she was sexually harassed in her brief in response to Defendant's motion and she filed an affidavit on November 16, 2006 (notably after Defendant's Reply was due and was filed) in which she asserts that these additional incidents occurred. Defendant's counsel, however, repeatedly asked Plaintiff during her deposition to identify every incident that occurred while she was employed by Defendant that constituted sexual harassment and Plaintiff only was able to identify the above examples. *See* Def.'s Mot., Ex. A at 248-255. Although Plaintiff cites numerous pages of her deposition testimony to

2

an employee named Don briefly grabbed her rear-end one time; (2) an unidentified employee swatted her rear-end one time with a plastic rope; (3) a co-worker patted her on the rear-end one time to wake her from a nap; (4) a co-worker grabbed his crotch and shook it in her direction; (5) another employee told her he could not "f-ing stand her and nobody else, too" and called her a "Bitch"; (6) a co-worker "put" his foot on her leg; (7) employees threw bolts at her; (8) her supervisor Bobby Keane referred to her as "bubba"; and (9) Keane made a comment about the length of her pubic hair.

As to her discrimination claim, Plaintiff contends that she was the only female assigned to install manifolds, which she claims was a difficult task because it involved manually lifting a heavy manifold and installing it on a vehicle. Plaintiff claims that she repeatedly requested a transfer from this position, but Defendant's management denied her requests. According to Plaintiff, it only was after Defendant introduced a mechanical

---

support a number of the additional incidents she now claims occurred, *see* Pl.'s Resp. at 5-6, she in fact did not describe a number of these incidents in these pages of her testimony; nor did she describe them elsewhere. Plaintiff cannot create a factual issue in response to Defendant's motion for summary judgment by offering an affidavit which contradicts her earlier deposition testimony. *Reid v. Sears Roebuck*, 790 F.2d 453, 460 (6th Cir. 1986); *Rosinski v. Elec. Data Sys. Corp.*, No. 90-2133, 1991 WL 105747, at *6-7 (6th Cir. June 18, 1991)(unpublished opinion). Plaintiff also provides affidavits from her sister Revia Gardner and Stanley Jones, her former boyfriend and a fellow co-worker, and cites portions of Jones' deposition testimony to support her sexual harassment claim. First, with respect to Jones, he describes conduct that Plaintiff previously never described. For example, Jones states that Plaintiff's supervisor, Bobby Keane, slapped Plaintiff on the rear-end. Second, Jones is not able to recall when this incident happened and whether Plaintiff complained to Defendant about the incident. *See* Pl.'s Resp., Jones Dep. at 58-59. Gardner admits that she did not personally witness any incidents of sexual harassment and only learned about them through Plaintiff. *See* Pl.'s Resp., Gardner Dep. at 19. Gardner asserts that Plaintiff sometimes sent her, via her cell phone, pictures of individuals who allegedly were harassing her and that Plaintiff called her during incidents when Plaintiff allegedly was being harassed. Gardner testified, however, that the pictures did not show anyone doing anything to Plaintiff and that she was not able to hear what the individuals were saying to Plaintiff. *See id.* at 20-26.

arm to assist in installing the manifold that she was promptly reassigned to another area.

Plaintiff also asserts in support of her discrimination claim that she was subjected to discipline for conduct for which Caucasian workers were not disciplined or were assessed less severe penalties. Specifically, Plaintiff refers to discipline she allegedly received on November 4 and December 12, 2003, and on September 22 and December 3, 2004.

On November 4, 2003, Plaintiff struck a fellow employee in the face. She claims that despite Defendant's policy and UAW rules mandating that both employees involved in a physical altercation must be suspended immediately pending an investigation, only she was suspended for this incident.

On December 12, 2003, Plaintiff was disciplined for creating a disturbance after she requested a restroom break from her supervisor, Tim Stewart, and Stewart made her wait until he could locate an employee to cover Plaintiff's position while she was on break. After Plaintiff returned from her restroom break, she asked Stewart to call her union representative. When Labor Representative Daisy Jones responded, Plaintiff became irate and began yelling at Jones. After Jones directed Plaintiff to leave the plant floor, as Plaintiff's conduct was distracting her co-workers, Plaintiff continued to yell as she proceeded out of the work area. Based on the progressive discipline rules set forth in the collective bargaining agreement between Defendant and the UAW, Plaintiff was suspended for the balance of her shift plus one week for the disturbance.

On September 22, 2004, Plaintiff's supervisor, Tony Fenech, approached Plaintiff because she was not wearing her safety glasses. Plaintiff testified during her deposition

4

that when Fenech approached her and told her to put on her glasses, she responded: "Fuck You." *See* Def.'s Mot., Ex. A at 192. Fenech disciplined Plaintiff for cursing at him, which is a violation of Defendant's Shop Rules and Regulations. *See id*., Ex. M. Based on the progressive discipline rules, Plaintiff was suspended for the balance of her shift, plus two weeks for this incident.

Another incident between Plaintiff and Fenech occurred on December 3, 2004. Fenech claimed that on that date, he had to continuously remind Plaintiff to stay at her position on the assembly line. Fenech testified that he finally issued Plaintiff the next step of discipline for wandering from her position on the line– another violation of the Shop Rules and Regulations. *See id*. This resulted in Plaintiff's suspension for the balance of her shift, plus thirty days.

On the same date, however, Plaintiff began a medical leave of absence. While on leave, Plaintiff was diagnosed with schizoaffective disorder which rendered her disabled. She began a total and permanent disability retirement due to her mental disorder on January 1, 2006.

## II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule

5

56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

### III. Applicable Law and Analysis

#### A. Sexual Harassment

To establish her claim of sexual harassment under the ELCRA, Plaintiff must show the following: (1) she belongs to a protected group; (2) she was subject to communication or conduct on the basis of sex; (3) she was subjected to unwelcome sexual conduct or communication; (4) the conduct or communication was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *Haynie v. Michigan Dep't of*

6

*State Police*, 468 Mich. 302, 308, 664 N.W.2d 129, 133 (2003) (citations omitted).

To satisfy the second element, the Michigan Supreme Court has made clear that the conduct need not be sexual in nature; rather, "the plaintiff need only show that but for the fact of her sex, she would not have been the subject of harassment." *Id.* However, referring to the third prong of the above test, the Michigan Supreme Court has also clearly stated that "to recover for sexual harassment, [the] plaintiff . . . must also show that the employee was 'subjected to unwelcome *sexual* conduct or communication.'" *Id.* at 309, 664 N.W.2d at 133 (emphasis added). The Court explained that pursuant to the ELCRA's definition of "sexual harassment," this requires the plaintiff to show that she was subject to "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . ." *Id.* (quoting MICH. COMP. LAWS ANN. § 37.2103(i)).

With respect to the fourth element, an objective reasonableness standard is utilized to assess whether a hostile work environment was created. *Radtke v. Everett*, 442 Mich. 368, 386, 501 N.W.2d 155, 164 (1993). Pursuant to this standard, the relevant question is "whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id.* at 394, 501 N.W.2d at 167. Among the factors to be considered are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S.

7

17, 23, 114 S. Ct. 367, 367 (1993). "It is only when the workplace is 'permeated' with discriminatory intimidation and insult that the Civil Rights laws are implicated." *Schemansky v. California Pizza Kitchen, Inc.*, 122 F. Supp. 2d 761, 777 (E.D. Mich. 2000)(citing *Harris*, 510 U.S. at 21, 114 S. Ct. at 370).

Finally with respect to respondeat superior liability, absent a claim of quid pro harassment[2], "the violation can only be attributed to the employer if the employer failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment." *Chambers v. Trettco, Inc.*, 463 Mich. 297, 313, 614 N.W.2d 910, 916 (2000). In other words, under Michigan law, an employer is not strictly liable when an employee is subject to a hostile work environment due to unwelcome sexual conduct or communication. *Id*. at 311-12, 614 N.W.2d at 915-16.

In this case, many of the incidents Plaintiff describes to support her sexual harassment claim cannot be said to have been "because of her sex." *Haynie*, 468 Mich. 133, 664 N.W.2d at 308. Specifically, there is no indication that any of the following incidents had anything to do with the fact that Plaintiff is a female: a co-worker telling Plaintiff that no one can stand her and that she is a "bitch"; someone calling her crazy; her supervisor calling her "bubba"; employees throwing bolts at her; and a co-worker putting his foot on Plaintiff's leg. These incidents also did not constitute "unwelcome sexual advances," "requests for sexual favors, or "verbal or physical conduct or communication

---

[2]In a case of quid pro quo harassment– i.e., where the employer or the employer's agent uses the plaintiff's submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment– the employer is strictly liable for the conduct. *Chambers*, 463 Mich. 310-11, 614 N.W.2d at 915-16. Plaintiff has not alleged a case of quid pro quo harassment.

8

of a sexual nature." Except for three incidents– when an employee named Don grabbed her rear-end; when another employee grabbed his crotch and shook it in her direction; and when Keane referred to the length of her pubic hair– the Court does not believe that the conduct Plaintiff describes to support her sexual harassment claim falls within the ELCRA's definition of "sexual harassment."

In any event, even if the Court were to conclude that the incidents Plaintiff recalls constitute sexual conduct or communications, it finds that Plaintiff fails to demonstrate that she was subjected to harassment sufficiently severe or pervasive to establish her hostile working environment claim. The incidents Plaintiff described during her deposition to support her claim of sexual harassment were isolated and, for the most part, constituted simple name-calling.

Additionally, Plaintiff cannot establish Defendant's liability for its employees' conduct toward her. Plaintiff acknowledged during her deposition that she never complained to anyone in higher management about the following instances: (1) a co-worker patting her on the rear-end to wake her from a nap; (2) a co-worker grabbing and shaking his crotch in Plaintiff's direction; or (3) Keane's comment about the length of her pubic hair. *See* Def.'s Mot., Ex. A at 290-91; 308. In those instances where Plaintiff claims she did complain, she was unable to specify when she reported the incident and to whom she reported it. *See id*. at 262; 414. In fact, while Plaintiff asserts in response to Defendant's motion that she "made repeated complaints to GM management who did nothing," *see* Pl.'s Resp. at 5, 6 and 18, she fails to cite to any testimony or evidence establishing that she made specific complaints, to specific individuals, on specific

9

occasions.[3] It is not the Court's responsibility to search the record to find a genuine issue of material fact to support Plaintiff's claim. *Spurlock v. Whitley*, 79 Fed. App'x 837, 839 (6th Cir. 2003)(citing *Street v. J.C. Bradford Co.*, 886 F.2d 1472, 1476, 477 (6th Cir. 1989)).

### B.     Disability Discrimination

In her Complaint, Plaintiff alleges that she was subjected to discrimination due to a learning disability.  However during her deposition, Plaintiff stated that she no longer is making this claim; rather, she now claims that she was discriminated against based on her mental disability.  *See* Def.'s Mot., Ex. A at 336-37.  To establish disability discrimination under Michigan's Persons with Disability Rights Act ("PWDRA"), Plaintiff must show: (1) she is disabled as defined by the act; (2) the alleged disability is unrelated to her ability to perform the job; and (3) she was discriminated against in one of the ways described by the statute.[4]  *Lown v. JJ Eaton Place*, 235 Mich. App. 721, 727, 598 N.W.2d 633, 636 (1999).

It appears that Plaintiff 's disability determination claim is based on Defendant's refusal to transfer her from Department 462, where she claims she was subjected to

---

[3]On page 6 of her response brief, Plaintiff cites several pages from her deposition transcript to show "that she complained repeatedly about the constant sexual harassment, racial and gender discrimination."  *See* Pl.'s Resp. at 6.  Having read those portions of her testimony, however, the Court is unable to identify when Plaintiff complained and specifically to whom she complained.  *See, e.g., id*., Stoudemire Dep. at 261-62; 264; 342; 414.  With respect to several instances, it appears that Plaintiff is asserting that she did complain simply because she believes a supervisor witnessed the incident.  *See, e.g., id*. at 284; 414.

[4]MICH. COMP. LAWS ANN. § 37.1202 sets forth the conduct prohibited by an employer based on an individual's disability.

harassment. Although Plaintiff contends that she had a disability at the time she requested a transfer, there is no evidence to support a claim that the Defendant refused her transfer request because of any disability. Plaintiff, in fact, admits that she lacks any evidence to establish that Defendant's failure to transfer her was related to her mental condition. *See* Def.'s Mot. Ex., A at 341-342.

Basically, this Court interprets Plaintiff's disability claim as a claim that, because Defendant was aware of her disability, it had a duty to reasonably accommodate that disability and it failed to do so when it refused her transfer request. The Michigan courts, however, have held that there is no obligation on an employer to transfer an employee to a different position in order to reasonably accommodate that employee. *Koester v. City of Novi*, 213 Mich. App. 653, 662-663, 540 N.W.2d 765, 770 (1995) (holding that the duty to accommodate under Michigan's disability discrimination statute does not require the employer to place an employee in another job because the duty to accommodate does not extend to a new job placement.) Moreover, the evidence supports the conclusion that Defendant failed or refused to transfer Plaintiff to the machining department because there were no openings in that department when Plaintiff's transfer application was pending. The applicable collective bargaining agreement provides that transfers only are granted when an employee has a transfer application pending for a particular department at least one week before an opening in that department is posted. *See id.*, Ex. E ¶¶ 2-3. Plaintiff offers no evidence that she applied for a transfer to any department other than the machining department. While Plaintiff contends that these procedures were ignored to allow two Caucasian employees– Joy Critcher and Larry Coopersmith– to transfer out of

11

Department 462, *see* Pl.'s Resp. Br. at 21, she offers no evidence to support her contention and admits that she does not know the circumstances of Critcher's or Coopersmith's transfers. *See* Def.'s Mot., Ex. A at 347. Defendant indicates that Critcher and Coopersmith did not transfer to the machining department where Plaintiff sought to be transferred.

The Court does not believe that Defendant's refusal to transfer Plaintiff otherwise falls within the prohibited activities of the PWDRA. *See* Mich. Comp. Laws, § 37.1202. That section prohibits the following actions on account of an individual's disability which is unrelated to his or her ability to perform the duties of a particular job: (a) failing or refusing to hire, recruit or promote; (b) discharging or otherwise discriminating against an individual with respect to compensation or the terms, conditions, or privileges of employment, and (c) limiting, segregating, or classifying an employee. *Id.*

### C. Race and Sex Discrimination

Under the ELCRA, as Plaintiff lacks direct evidence to show that she was discriminated against on the basis of race or sex, the well-known burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), applies. First, Plaintiff must establish a *prima facie* case of discrimination by proving: (1) that she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct. *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986); *Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 695, 568 N.W.2d 64, 68 (1997). If Plaintiff

12

establishes a prima facie case, an inference of discrimination arises. *Patterson v. McLean Credit Union*, 491 U.S. 164, 187, 109 S. Ct. 2363, 2378 (1989). In order to rebut this inference, Defendant must present evidence of a legitimate, nondiscriminatory reason for its conduct. Plaintiff then must demonstrate that Defendant's proffered reason was not the true reason for its decision– in other words, that it was pretextual. *Id*.

Plaintiff claims that Defendant refused her request to transfer to the machining department because of her race or sex. Defendant contends that Plaintiff fails to establish a prima facie case of discrimination because, although she is a member of a protected class, she fails to show that Defendant treated any individual who was similarly situated and outside the protected class differently. As indicated previously, while Plaintiff identifies two Caucasian individuals (Critcher and Coopersmith) whose requests to transfer were allegedly granted, Plaintiff offers no evidence to refute Defendant's claim that these individuals were transferred to a department other than the machining department where Plaintiff's transfer application was pending. Plaintiff also fails to show that she had an application on file to transfer to the department to which these individuals were transferred, as required by the relevant collective bargaining agreement.[5] Thus the Court concludes that Plaintiff fails to establish that Defendant refused to transfer her from Department 462 for an unlawful reason.

To the extent Plaintiff contends that she was discriminated against based on her sex because Defendant assigned her to the manifold position when it needed it to be done

---

[5] Defendant does not contend that Plaintiff is not qualified for the job.

13

manually, Plaintiff offers no proof to show that individuals outside of the protected class were not assigned to this same position. In fact, during her deposition, Plaintiff testified that male employees were assigned the same task and had to perform it in the same manner as she did. *See* Def.'s Mot., Ex. A at 488-89. Clearly, if the job was also assigned to male employees, Plaintiff cannot establish that she was discriminated against because of her sex when she was assigned to this position.

With regard to Plaintiff's claim that she was discriminated against with respect to discipline, the Court does not find that Plaintiff has produced any evidence to support this claim to justify a denial of Defendant's motion for summary judgment. As to the incident on November 4, 2003, when Plaintiff was involved in a physical altercation with a fellow employee, Plaintiff admits that Defendant never disciplined her for her behavior. *See* Def.'s Reply, Ex. A at 483. Instead, immediately after the incident occurred and before anyone was disciplined, Plaintiff went on medical leave. *See id.* As to the incident on December 12, 2003, Plaintiff theorized during her deposition that Daisy Jones disciplined her, not because of any discriminatory animus, but because of a telephone call Jones had received from Plaintiff's sister. *See* Def.'s Mot., Ex. A at 532-33.

Similarly, when asked during her deposition whether Tony Fenech disciplined her, because of her sex, for removing her safety glasses on September 22, 2004, Plaintiff first responded that Fenech disciplined her "to show out." *See id.* at 533-34. Plaintiff was not able to identify any instance when Fenech failed to discipline male employees who were not wearing their safety glasses. *See id.* at 535-36. The only evidence Plaintiff offers to establish that Fenech's actions were motivated by her sex or her race is her assertion that

14

he did not discipline Caucasian employees for throwing gloves around the workplace. *See* Pl.'s Resp. at 23. Plaintiff equates throwing gloves and failing to wear safety glasses because both infractions are viewed as safety hazards. Even if the Court could equate the two infractions, however, the evidence establishes that Fenech did not even discipline Plaintiff for failing to wear safety glasses; rather, Fenech disciplined Plaintiff because she cursed at him when he instructed her to put her safety glasses back on. *See* Def.'s Mot. Ex. B at 52-53.

Plaintiff also fails to provide any evidence to show that her race or sex had anything to do with Fenech's decision to discipline her for leaving her position on the line on December 3, 2004. She acknowledges that employees are supposed to get permission from their supervisor if they need to leave the line and are required to follow their supervisor's directions. *See id.*, Ex. A at 150. Fenech testified that Plaintiff repeatedly left her position on the line on December 3, and that he repeatedly warned her to return to her position before he finally disciplined her. *See id.*, Ex. B. at 88-89. Plaintiff offers no evidence to show that Fenech failed to discipline Caucasian or male employees who repeatedly left their position on the assembly line after being told not to do so.

Plaintiff also has not demonstrated that she received longer penalties than Caucasian and/or male employees for the same infractions. In comparison, Defendant establishes that under the governing collective bargaining agreement, discipline for violations of the Shop Rules and Regulations is progressive. *See* Def.'s Mot., Ex. B at 114-15. Plaintiff offers no evidence to suggest that any similarly situated Caucasian or male employee– i.e., an employee engaging in the same conduct with the same history of

15

misconduct– received a less severe penalty for the same behavior.

In the last page of her response brief, Plaintiff asserts in a single sentence that Defendant has engaged in a pattern of discrimination in discipline. *See* Pl.'s Resp. at 25. Following this sentence, Plaintiff cites a series of exhibits. *See id.* (citing Ex. 22-26). Exhibit 22 is entitled "General Motors Romulus Plant Disciplinary Chart – V6 Assembly" which attempts to show that Defendant assessed a larger percentage of the total disciplinary hours against African-American employees than the percentage of African-American employees in the V6 Department. *See id.* Ex. 22. The remaining exhibits provide a list of employees and the disciplinary action(s) against them, on which someone has noted the race and sex of the employees. *See id.* This "evidence" is woefully insufficient to demonstrate a genuine issue of material fact that Defendant has engaged in a pattern and practice of discrimination against African-Americans and/or women. First, the Court is not able to identify who prepared Exhibit 22 or made the notations on the remaining exhibits. Second, the value of Exhibit 22 is questionable as the exhibit specifically states that it in fact is not even based on the actual number of African-American employees in the V6 Department, but instead on an assumption of that number. Finally, Plaintiff provides no expert testimony to explain to the Court the significance of the numbers provided.

### D.   **Intentional Infliction of Emotional Distress**

To establish a claim alleging intentional infliction of emotional distress, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Hartleip v. McNeilab, Inc.*,

16

83 F.3d 767, 777 (6th Cir. 1996)(citing *Roberts v. Auto Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985)). Plaintiff fails to present evidence to create a genuine issue of material fact with respect to the first element. This element is satisfied when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts*, 422 Mich. at 602 (quoting Restatement (Second) of Torts, § 46 (1965)). Plaintiff fails to identify any conduct by Defendant sufficient to satisfy this standard.

### E. Assault and Battery

Plaintiff alleges in her Complaint that Defendant is liable for assault and battery because she was hit and/or touched by other employees and had bolts thrown at her. *See* Compl. ¶¶ 61-65. An employer, however, is not liable for a tort committed by an employee outside the scope of his or her employment. *Zsigo v. Hurley Medical Center*, 475 Mich. 215, 217, 716 N.W.2d 220, 217 (2006). Plaintiff acknowledges that it was not within the scope of her co-employees' employment to hit her, threaten her, or throw things at her, *see* Def.'s Mot., Ex. A at 248, and she admits that Defendant did not know about its employees' actions and did not authorize or condone their conduct. *See id*. at 564-65, 579, 585, 589-90.

### IV. Conclusion

For the reasons set forth above, the Court concludes that Defendant establishes the absence of a genuine issue of material fact and/or that it is entitled to judgment as a matter of law with respect to the elements necessary to establish the claims in Plaintiff's

17

Complaint.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is

**GRANTED**.

                                              s/PATRICK J. DUGGAN
                                              UNITED STATES DISTRICT JUDGE

Copies to:
Lennox Emanuel, Esq.
Alex L. Alexopoulos, Esq.